## STRUCTURAL CHANGES IN BUILDING BY TENANT AND ACTS WHICH CONSTITUTE WASTE.

Superior Court of Cincinnati.

COURTLAND BUILDING Co. and BEN B. DALE V. ISADORE F. BLUMENTHAL ET AL.

Decided, March 8, 1920.

*Landlord and Tenant—Agreement as to Certain Improvements—Tenant by Going into Possession Waives Right to Object to Sufficiency of the Improvements—Structural Changes may be Enjoined as Acts of Waste.*

1. When a landlord contracts to make certain improvements in leased premises as a condition precedent to commencement of the leasehold and makes such improvements therein, his tenant by going into possession of the premises without offering any objection to the character of the improvements thereby accepts the premises and waives any right to thereafter object to the sufficiency of such improvements.

2. A tenant who has covenanted in a lease to make no alterations or additions to leased premises without the consent of his landlord and to commit no act of waste, will be enjoined upon application of his landlord, who has not consented to such change, from making any improvements which involve structural changes, even if such improvements would add to the value of the leased premises.

3. A change in the arrangement of the heating system, of the show windows, of the glass front, and of the entrance door of a building, are all structural changes and will be enjoined as acts of waste.

*Dale & Dale* for plaintiff.
*Robert M. Ochiltree.*

Marx, J.

This is an action brought by Ben B. Dale, as the owner of a building at the corner of Burnet and Erkenbrecker avenues to enjoin Isadore F. Blumenthal, one of his tenants from making certain alterations in such building. The defendants, Charles Rosensteil & Son hold a contract from the defendant Isadore F.

Blumenthal to make the repairs complained of, and the defendant George E. Rendigs, is the building commissioner of the city of Cincinnati and has issued a license authorizing such alterations. The latter two defendants are not interested in the real question at issue which concerns only the plaintiff landlord and his defendant tenant. This question is whether the tenant shall be enjoined from making the alterations and improvements in the two stores lease by him which he proposes and intends to make unless enjoined.

On January 30, 1917, Ben B. Dale, as lessor, entered into an agreement of lease with Isadore F. Blumenthal as lessee. The lease was for the two stores and the two basements underneath the same known as 3363 and 3365 Burnet ave. and located at the southwest corner of Burnet and Albany, sometimes called Erkenbrecker avenue. The term of the lease was ninety-six months beginning March 1, 1917, at a rental of $125 per month for the first sixty months and $150 per month for the last thirty-six months. The lessee covenanted and agreed among other things to make no alterations or additions in or to said premises without the written consent of said owner,'' and also that he would ''not commit or suffer any waste therein.'' It was also agreed that the lessee would do the decorating and interior repairing but that the lessor would do the exterior painting and repairing and that at the end of term the premises were to be surrendered and delivered to the lessor in as good order and condition as the same were when leased or might subsequently be put by the ''owner.'' The use of the premises was specifically restricted to ''a first-class drugstore only.'' The lessor agreed to supply heat during the winter months.

On the same date the parties entered into an agreement with respect to certain improvements which the lessor agreed to make in the two stores leased to the defendant Blumenthal. This contract contained twelve separate clauses concerning these improvements. The obvious intention of the parties was in so far as practicable to combine the two separate stores, which joined each other on Burnet avenue, so, that the two stores could be

thrown together and used as one and that the cellars underneath these two stores might likewise be used in conjunction with each other.  Owing to the fact that the ground floor and the basement floor of the south store were higher than the ground floor and basement floor of the north store, it was necessary to construct an incline in order to compensate the difference between the ground floor levels.  In order to effectuate the purpose which the parties intended, the owner agreed to cut an eighteen foot opening in the wall between the two storerooms and to build slanting floors equipped with safety treads.  The owner also agreed to take up the tiling and cement floor of 3365 and replace the same with wooden floors.  It was also agreed that an opening should be cut near the west end of the wall between the two stores to be equipped with a slanting floor, and that certain space leading to the entrance hall of the apartments above were to be removed.  The owner was also to construct a partition across the west end of room 3365 along lines which the parties were to agree upon.  The owner also agreed to paint the ceilings and walls white or such other color as the lessee might desire.  The outside woodwork was likewise to be white. It is not disputed that all of these changes, alterations and improvements which the owner agreed to make and which involved considerable work and considerable necessity for conference and agreement between the landlord and tenant were made as stipulated in the contract.  However, in addition to the improvements which have been outlined above the owner further agreed to make certain additional changes and alterations and this controversy centers itself around the alleged failure of the owner to substantially perform the following clauses of his contract, namely Articles 3, 4, 6 and 7.  The tenant Blumenthal claims that the owner Dale did not perform his agreement to make the improvements provided for in these clauses or articles of his contract and therefore proposes to make these alterations and improvements in the building himself.  In order to carry out his purpose he made a contract with the defendant Rosensteil to perform the work and procured a license from the

building commissioner authorizing him to proceed. It was at this stage of the case that a petition was filed seeking to restrain the defendant from making these alterations and improvements or committing any waste upon the property. After notice to the defendant Judge Merrell issued a temporary restraining order restraining the defendant "from making alterations in the store fronts of the premises at Erkenbrecker and Burnet avenues, occupied by the defendant Blumenthal, or in the heating plant operated in connection with said building." This entry was made December 15, 1917. Over two years have intervened since the defendant was enjoined from making the proposed alterations and additions and during all of this time no motion to set aside, vacate or modify this restraining order was filed or applied for. The case having been reached for final hearing the plaintiff now asks that the temporary order be made permanent. The court after hearing the evidence of the architects and heating experts introduced by both plaintiff and defendants in support of their several contentions made a personal inspection of the premises, and from the evidence introduced and after a personal inspection of the premises has reached the following conclusions.

The first change which the defendant proposes to make is in the wall separating the two basements. In article 3 of the contract entered into by the parties the owner agreed to cut an opening in the brick wall between the basements "of sufficient width and size to get merchandise through conveniently and to be located as near to the east end of the basement as possible, the bearing and construction of the building being duly considered." It is admitted that he did cut an opening in the wall about four feet in height and about two feet seven and one-half inches in width at a distance of about fifteen feet from the elevator which runs from the side walk level, to the basement floor level. It is also apparent that this opening could not have been placed any closer to the elevator without endangering the strength of the structure. However, it is complained that it is three feet from the floor level of the north basement to the sill

of the opening, and twenty-one inches from the floor level of the south basement to the sill of the opening thereby requiring the use of steps upon both sides of the opening and making it extremely inconvenient to use or carry heavy articles such as barrels and crates of bottles from the north cellar into the south cellar. The defendant proposes to cut this opening down to the level of the south floor and to build an incline to compensate for the difference in elevation between the north floor and the south floor so that he can truck barrels and heavy boxes from one cellar to the other. The objection to this proposal urged by the plaintiff is that it would require the return steam pipe of the heating system to be carried from the south cellar through the wall to the north cellar and dropped below the proposed opening and carried some five feet past the opening and then brought up again and through the wall to the south cellar and thence back to the central plant. In technical language it is admitted upon both sides that this would constitute a "trap" in the return pipe or in other words that approximately five feet of the pipe would constantly be filled with water. The testimony as to the effect of such a trap was conflicting, but it is undisputed that such a trap would necessitate the installation of "air vents," "drains" for the water and would probably retard the return circulation to the boiler. This latter feature in addition to the greater likelihood of freezing in cold weather clearly makes the change proposed by the tenant one which endangers the entire heating system of the building, and for these reasons will be enjoined.

The second change proposed by the tenant is a widening and alteration of the main entrance door of the store at No. 3365. The agreement of the owner expressed in Article 4 of the contract between the parties was "to build in the main entrance door to store No. 3365, two swinging doors and transoms, the doors, if possible to swing both inwardly and outwardly. This agreement is very explicit. It is not to widen the door or to make any change with respect to the frame. It is merely to build "in" the door two swinging doors which doors it was

agreed must be double acting, that is swing both in and out. It is conceded that two doors were built in the existing door frame, and that these doors do swing both inwardly and outwardly, and that they have been used for the past two years daily by hundreds of people. With respect to the width of the doors, the weight of the doors or the convenience or inconvenience of their use by the public, there is nothing said in the contract. This court cannot make a new contract for the parties, and therefore is of the opinion that the doors built by the lessor comply with the language of Clause 4 of the contract.

The third change proposed by the tenant concerns the construction of transoms which it is admitted would require alterations in the glass front of the store. The Clause 7 of the contract states that "for the purpose of ventilating the drugstore, transoms are to be made wherever possible, the construction of the building and the show cases permitting." The requirement that transoms must be constructed wherever possible must be interpreted in the light of the purpose expressed in the preceding clause, namely when necessary to secure the ventilation of the store. The evidence does no sufficiently establish that any further ventilation of the store is necessary. There are two front doors on the east side of the store. There are two large windows on the north side of the store. There is a window in store 3364 so that there is both east and west, and north and south ventilation.

The fourth and last change proposed by the defendant is to alter the show windows. Clause 6 of the contract provides for show windows to be "constructed as nearly as possible along lines similar to those in store of Mr. Blumenthal" in Walnut Hills. He complains that in his store at Walnut Hills the cases were constructed of quartered oak while in this store the owner built the cases of pine. Mr. Rosensteil who testified for the defendant said that it would be impracticable to build the show cases of quartered oak if it was intended to paint them white. Since this was the intention of the parties as evidenced by the contract and by the fact that the fixtures and trimmings of the

store were subsequently painted white, in the opinion of the court the owner was justified in using a different wood than one which it would not have been practicable to paint white. The remaining point of dissimiliarlty between the show cases built in this store and the show cases in the Walnut Hills store is that in the latter store the back of the case is three-quarter glass so that a person outside could look in, or a person inside can look out. While in this store the cases have been constructed of an entire wood back and completely cut off the light and the view. It is claimed in justification of this difference that the defendant preferred to have an all wood back. The court can not determine this question. The contract contained a great many items. In several instances it expressly called for work to be done in such a manner as landlord and tenant might subsequently agree. It is manifest that where there has been a substantial performance of a building contract that this is sufficient. So in this case the deviation from the letter of the agreement concerns such a small item of a contract which has been substantially carried out that the court is not disposed to deny the relief prayed for by plaintiff upon a technical failure in one comparatively small matter. Indeed it may be questioned whether the defendant has not waived entirely his right to com plain of the sufficiency of the performance of the contract, to make improvements by accepting the premises and entering upon his tenancy. In the case of *McClure* v. *Little,* 19 Law Times Reports, (N. S.), page 287, the plaintiff brought suit to recover damages from defendant for a breach of agreement to put the premises in good tenantable repair. The Court of Exchequer held that if the tenant had any complaint he should have called the landlord's attention thereto while the work was going on and that by going into possession without complaint was no longer in a position to say that the repairs which were made were not sufficient. To the same effect is *Williamson* v. *Miller,* 55 Iowa, 86, in which it was held that where a lessor agreed to make certain repairs for a tenant and after making the repairs the building was accepted by the tenant without objection

"the latter was estopped by such acceptance from afterwards claiming damages for a breach of the covenants."

The court therefore finds that there has been a substantial performance of the contract made by the parties with respect to improvements and alterations in the leased premises. The tenant having covenanted not to make any alterations or additions to the premises without the written consent of the owner, and having further covenanted not to commit any waste, will be restrained by a court of equity from making the proposed changes. It is well settled law that enlarging the opening in a brick wall, changing the main entrance doors, cutting transoms and changing of the glass front of a building are all acts of waste which the tenant is not permitted to perform. It is equally well settled that a court of equity will issue an injunction to prevent the commission by the tenant of waste, for the reason that the landlord is entitled to receive his premises back in substantially the same condition in which he leased the same, reasonable wear and tear excepted. Tiffany on Landlord and Tenant, Edition of 1910, Article 109.

For these reasons the temporary restraining order will be made permanent.